**Victorine K. WIMPFHEIMER, Plaintiff,**

**v.**

**Bernard M. GOLDSMITH et al., Defendants.**

Court of Chancery of Delaware, New Castle.

Dec. 4, 1972.

Joseph A. Rosenthal, of Cohen, Morris & Rosenthal, Wilmington, and Bennett Frankel, New York City, for plaintiff.

Edmund N. Carpenter, II, and Wendell Fenton, of Richards, Layton & Finger, Wilmington, and Atwood Dunwody, of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for Estate of William H. Mencher.

DUFFY, Chancellor:

The determinative issue is whether this action is barred against the estate of a Florida decedent by the Non-Claim Act of that State.

### A.

This is a derivative suit filed on February 2, 1971 by plaintiff on behalf of Nytronics, Inc., a Delaware corporation. In the complaint William H. Mencher, a non-resident stockholder of Eastern Air Devices, Inc., a Delaware corporation, was charged with unjust enrichment in certain transactions with Nytronics. His stock in Eastern Air Devices was sequestered pursuant to an order dated February 12, 1971; he died domiciled in Florida on July 14, 1971 without having submitted to personal jurisdiction here.

The First National Bank of Miami was duly qualified by the County Judges' Court of Dade County as Executor of Mr. Mencher's Estate. Notice to creditors was first published as required by Florida law on July 22, 1971. On February 22, 1972 the Executor appeared in this Court and filed a Statement of the Fact of Death pursuant to Chancery Rule 25, Del.C.Ann. The Executor entered a general appearance as a substituted defendant on February 28, 1972 and at that time, without objection by plaintiff, this Court vacated the sequestration order as to Mr. Mencher's property. On March 3 the Executor filed a motion to dismiss under Rule 12(b) or, alternatively, for summary judgment on the theory that the action is barred under the six-month statute of limitations in the Florida Non-Claim Act. This is the decision on that motion.

### B.

A threshold question is the choice of law to be applied. Plaintiff says that, under

McCord v. Smith, Fla., 43 So.2d 704 (1949), the Florida courts do not give extra-territorial effect to the statute unless the other state involved has a similar act; and, she continues, since Delaware does not have a comparable law, the Act does not control. The difficulty with this argument is that *McCord* does not support it. In that case the Florida Supreme Court considered the effect to be given a judgment entered by an Iowa court against the personal representative of a Florida estate after the period for filing claims had run. The Court held that service under an Iowa long-arm statute within the period for filing claims constituted sufficient notice to toll the statute, at least where the foreign statute was comparable to the Florida one.[1]

■ The Florida Supreme Court has consistently stated that the statute runs against non-residents as well as residents and to that extent it does have extra-territorial application. McCord v. Smith, supra; Brooks v. Federal Land Bank, 106 Fla. 412, 143 So. 749 (1932).

■ Delaware law would clearly apply in determining rights to property having a situs here and seized pursuant to our sequestration statute.[2] 8 Del.C. § 169; Breech v. Hughes Tool Company, 41 Del. Ch. 128, 189 A.2d 428 (1963). But since the property—the stock—has been released (and estoppel is not argued) we are not concerned with rights in property having a Delaware situs. In the present posture of the case plaintiff seeks a personal judgment against a Florida executor and, by definition, a right to share in estate assets held subject to the law of that jurisdiction. It is my view that, under well-established law, Florida as the domiciliary state, has the right to determine the validity and timeliness of claims against the estate. Restatement (Second) of Conflict of Laws, §§ 316, 344, 345. Clearly, Florida considers that the Non-Claim Act is an integral part of its probate law and the policy which underlays it. State v. Moore's Estate, Fla., 153 So.2d 819 (1963); Toney v. Adair, Fla.Dist.Ct. of App., 120 So.2d 622 (1960). It follows that for choice of law purposes I am compelled to consider the Florida Non-Claim Act as substantive and not procedural. Restatement (Second) of Conflict of Laws, § 143; Pack v. Beech Aircraft Corporation, 11 Terry 413, 132 A.2d 54 (1957). See also Svenska Handelsbanken v. Carlson, 258 F.Supp. 448 (Mass.1966). Hence, Florida law is applicable.

### C.

The Florida Non-Claim Act, 21 F.S.A. § 733.16 provides:

"(1) No claim or demand . . . for damages, including but not limited to

---

1. The Court said:
   "If our conclusion be construed as giving extra-territorial application to . . . [the Act], to the extent indicated we hold that it should, and does, have extra-territorial application."

2. 10 Del.C. § 366(a) provides:
   "(a) If it appears . . . that the defendant . . . is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant . . . to appear by a day certain . . . . Such order shall be served on such non-resident defendant . . . by mail . . . and shall be published . . . not less than once a week for three consecutive weeks. The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. Any defendant whose property shall have been so seized and who shall have entered a general appearance . . . may . . . petition the Court for an order releasing such property . . . from the seizure. The Court shall release such property unless the plaintiff shall satisfy the Court that because of other circumstances there is a reasonable possibility that such release may render it substantially less likely that plaintiff will obtain satisfaction of any judgment secured. . . . ."

actions founded upon fraud or other wrongful act or commission of the decedent, shall be valid or binding upon an estate, or upon the personal representative thereof, . . . unless the same shall be in writing and contain the place of residence and postoffice address of the claimant, and shall be sworn to by the claimant, his agent or attorney, and be filed in the office of the county judge granting letters. Any such claim or demand not so filed within six months from the time of the first publication of the notice to creditors shall be void . . .; and no cause of action, at law or in equity, heretofore or hereafter accruing, including but not limited to actions founded upon fraud or other wrongful act or omission, shall survive the death of the person against whom such claim may be made, whether suit be pending at the time of the death of such person or not, unless such claim be filed in the manner and within the said six months as aforesaid; . . ."

The purpose of the statute was stated by the Florida Appeals Court in Davis v. Evans, Fla.App., 132 So.2d 476 (1961):

"Analysis of the non-claim statute and of the hereinafter discussed Rule 1.-19(a)(1), 1954 Florida Rules of Civil Procedure, 30 F.S.A., reflects a common purpose to provide for the prompt and efficient termination of the affairs of deceased persons *and to preserve,* within the limitations expressed, the rights of persons having lawful claims against the estate. There is no implication in either that it is usable as a vehicle to divest persons of their lawful claims, as distinguished from barring enforcement thereof under the conditions specified."

Earlier, in *McCord,* the Florida Supreme Court had emphasized the same point, saying:

"The cardinal purpose of the statute —in toto—is to facilitate an orderly and expeditious settlement of estates. In the case of Ellison v. Allen, 8 Fla. 206, this Court committed us to the proposition that, 'The law was made to subserve the cause of right and justice by facilitating the speedy settlements of estates and by preventing the enforcement of stale demands. *It never was intended to be made the engine of oppression, or to work hardship or injury to any one. To interpret it according to its strict letter would be to give it an operation harsh in the extreme, and * * * it might be made to defeat the most righteous and equitable demands.'* (Italics supplied.)"

It is tacitly conceded that plaintiff did not file a claim as prescribed in the statute. She argues, however, that her claim comes within one or more statutory exceptions. As to these, failure to file a claim does not operate as a bar under three exceptions which are included in the statute; briefly, (a) a claim is not barred if suit is filed and process served on the personal representative within the six-month period; (b) a claim based on a recorded mortgage or a "lien of any person in possession of personal property" is not barred to the extent of the specific property so mortgaged or held; and (c) a claim is not barred to the extent that it is secured by any casualty, surety, automobile or public liability or other similar insurance.

D.

There are few Florida cases dealing with the question of what constitutes an adequate alternative to filing a claim in the office of the county judge. However, in Anderson v. Agnew, 38 Fla. 30, 20 So. 766 (1896), the Supreme Court held that substitution of an executor in pending litigation is the equivalent of actually filing a claim with the county judge and, therefore, it was not barred for failure to so file after publication of letters. And in Davis v. Evans, supra, it was tacitly assumed that substitution of the executor for the decedent in pending litigation was substantially equivalent to filing a suit against the executor within the meaning of the Non-Claim Act.

In *Anderson*, substitution was effected within the time limited by the statute for the presentment of claims and in *Davis* the Court found that the executor was estopped from raising the limitation. Here the Executor was not substituted until after the six-month period had expired, but I do not regard this as significant under the Florida decisions. The existence of notice to the executor is the crucial issue, not when formal substitution is made in the litigation. Indeed, the statute is silent as to the necessity of substituting a personal representative within the six-month period. However, the purpose of the statute is clear, as stated by the Court in *McCord*:

"The intent of the legislature in requiring either the claim to be filed in the office of the county judge or presented by service of process in an action against the personal representative was to make certain that notice to such personal representative and to other creditors was given. If the secondary method of presenting claims is followed by the creditor the law requires the administrator or executor to file a suggestion of the pendency of the suit in the office of the county judge. Should the personal representative be derelict in his duty it is no concern of the creditor. The object to be accomplished is fulfilled as completely in the instance of a claim determined in another state as in one wherein the claim was adjudicated in this jurisdiction.

We do not believe it necessary to cite authority for the well-established general rule recognized in this State that acceptance of service is as effective as service of process upon the defendant in personam."

■ That rationale is applicable here. This suit was pending at the time of Mr. Mencher's death. The Executor must be deemed to have had actual notice of the pendency of this action because he came into this Court and suggested the death on the record. In addition, property belonging to the estate—the Eastern Air Devices stock—had been seized in connection with this litigation. As a result of a general appearance by the Executor this Court, on the Executor's request, released the property which had been (for present purposes) effectively sequestered prior to Mr. Mencher's death. Under these circumstances it seems to me that the purpose of the Florida Non-Claim Act as interpreted by the Courts of that State has been substantially met.

E.

■ My analysis of the Florida Act also indicates that plaintiff's claim was, at the time the Executor appeared here, within the purpose and the substance if not the precise language of the third exception, which provides that the "lien of any person in possession of personal property" is not impaired (by failure to file a claim) to the extent of the property so held. F.S.A. § 733.16(1)(b). Here the stock was "personal property" which was "seized" by the sequestrator by virtue of both 10 Del.C. § 366(a) and the order entered by this Court. Sequestration, in effect, constitutes a lien on the stock. Nickson v. Filtrol, Del.Ch., 265 A.2d 425 (1970). And the property could have been "sold under the order of the Court to pay the demand of the plaintiff." See 8 Del.C. § 169 and Breech v. Hughes Tool Company, supra; Wife v. Husband, Del.Ch., 271 A.2d 51 (1970). Certainly a Delaware sequestrator who has seized stock having a statutory situs here and which can be sold under order of this Court, is "in possession" thereof within the meaning of the Florida statute, even though he does not have actual physical possession of the stock certificates. And, of course, the lien is not personal to the sequestrator: it is held for the benefit of plaintiff.

While the stock has been released from sequestration and any "lien" thereon has been lost, that did not take place before the Executor had notice òf the claim and entered a general appearance in this Court (when the sequestered property was released at its request). Although the facts do not precisely fit the statute, it seems to me that the purpose of the statutory exception has been met and this provides an additional reason why, in justice, the claim should not be regarded as barred by the Act. Compare McCord v. Smith, supra.

In light of substantial compliance with the purpose of the Non-Claim Act as evidenced by the Executor's presence here, the claim is not barred by Florida law. It follows that defendant's motion will be denied.